# Scranton Gas & Water Co. *v.* Lackawanna Iron & Coal Co., Appellant.

[Marked to be reported.]

*Contract—Water company—Construction of contract.*

Plaintiff, a water company, had means of supplying pure water from a mountain stream, and could also supply water from a river contaminated by acids from mines. Defendant was an iron and coal company. Plaintiff agreed in writing to furnish defendant with pure water for the " generation of steam, for fire hydrants and hydraulics, and for stores and dwellings," for a certain price per annum. The contract stipulated that the undertaking should not include the furnishing water for tuyeres, boshes or condensers, or for any other purpose than those named in the agreement. Plaintiff further agreed to furnish defendant " such other water as

may be required " by defendant for tuyeres, boshes and condensers, and for all other purposes required by the works, except for waterwheels, from the river. *Held,* that the right of the defendant to pure water was confined to such a supply as was necessary for the generation of steam, for fire hydrants and hydraulics, and for stores and dwellings; and that the words " such other water " had no reference to the " pure water " which was to be supplied for these purposes.

*Statute of limitations—Fraud—Taking of water.*

Plaintiff, a water company, agreed to supply defendant, a coal and iron company, with " pure water " for certain purposes, and other water from a river contaminated by acids, for other purposes. Plaintiff put in the pipes and connections by which the pure water was supplied, and under the agreement had access to defendant's premises for inspection, and also the right to put in water meters. For a period of ten years, defendant used " pure water " for purposes other than those contemplated by the agreement, without the knowledge and consent of plaintiff, but without practicing any deception or fraud to divert the attention of plaintiff. *Held,* that the statute of limitations barred plaintiff's right to recover for all water taken prior to six years from the date of the bringing of the suit. A plaintiff is bound to take notice of a trespass of which he might have known by the use of the means of knowledge within his reach, unless his vigilance be relaxed or diverted by the actual fraud of the defendant.

Argued Feb. 28, 1895. Appeal, No. 172, Jan. T., 1895, by defendant, from judgment of C. P. Lackawanna Co., May T., 1894, No. 786, on verdict for plaintiff. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM and MITCHELL, JJ. Reversed.

Assumpsit to recover for water alleged to have been surreptitiously and fraudulently abstracted from plaintiff's pipes, and used by defendant, from March, 1881, to January 1, 1891. Before GUNSTER, J.

At the trial it appeared that plaintiff supplied the city of Scranton with pure water from reservoirs along the upper stretches of Roaring brook. The water of the Lackawanna river and Roaring brook near the city of Scranton is contaminated by acids from coal mines. On August 31, 1874, plaintiff entered into an agreement in writing to furnish defendant with water for certain purposes. A dispute having arisen between the parties, a supplemental contract dated February 10, 1881, was made, of which the first and second clauses are as follows :

" First. The said Scranton Gas & Water Company agree to furnish so much pure water as may be necessary for the economical use of the said Lackawanna Iron & Coal Company

for the generation of steam, for fire hydrants and hydraulics and for stores and dwellings specified in the contract to which this is a supplement, for ten thousand ($10,000) dollars per annum, payable in monthly installments on or before the fifteenth day of each and every month for the preceding month. This is not to include water for tuyeres, boshes or condensers, or any other purposes than those above named, and the said iron and coal company agree to arrange their works so as to use the water for hydraulics over as many times as is practicable without unreasonable expense, and the officials of said gas and water company shall at all times have access to said iron company's works to see whether the arrangements for saving water are working satisfactorily, and may at their own expense, put meters upon the waste pipes if said gas and water company shall so desire.

" Second. The said gas and water company will, if requested by the said iron and coal company, furnish, upon reasonable notice of the quantity required, from the Lackawanna river or Roaring brook, such other water as may be required by said iron and coal company in excess of that now obtained by the present appliances of said iron and coal company from Roaring brook (which appliances are to be maintained in full use by said iron and coal company,) for tuyeres, boshes and condensers, and for all other purposes required by their works east of the Lackawanna river, except for water wheels, provided the iron and coal company pay the interest on the cost of constructing the necessary works for that purpose, and also the actual cost of operating and keeping the same in repair. Said iron and coal company are to pay for their own service pipes from the mains of said water company, which mains are to be laid convenient to the works of said iron and coal company, and where the superintendent of said iron and coal company may direct, and any damages assessable against said gas and water company for the erection of such works or mains to be chargeable as cost of construction, and the gas and water company agree to reduce such damages as much as possible by legal process.

" The payment of interest upon cost of construction, together with the cost of operating and repairs upon the same shall be made by the said iron and coal company to the said gas and water company, in monthly installments, on or before the fif-

teenth day of each and every month, to commence when the works are in operation."

The court charged in part as follows:

" Now, it is alleged that the employees of the defendant company took water and appropriated that water, this pure water, for other purposes than these which are specified in the agreement of 1881, that is for steam, hydraulics, fire hydrants, and stores and houses. It is alleged that the defendant company used this water for cooling purposes, for cooling the cinders and the ingots as the metal was cast; for the filling of boshes and tubs in the different shops; for drinking purposes, and for general purposes whatever the defendant saw fit to use it for, outside of the four purposes specified in the agreement of 1881.

" [Gentlemen of the jury, if the defendant company drew pure water from the pipes of the Scranton Gas & Water Company, and used it for other purposes than those specified in the first section of the contract of 1881, without the knowledge or consent of the gas and water company, then the law places upon them the liability, the obligation, to pay for it, and it also implied a promise to pay for it, even though there may not have been any express promise.

" Now, then, if that is the case, the two principal questions for your consideration are, first, Did the defendant company abstract and use water for other purposes than those four which I have mentioned? If they did, they ought to pay for it, and the measure of damages would be what that water was fairly worth, not what the plaintiff might ask for it, because, as I understand their charter, while they may fix rates, their rates must be reasonable, nor yet what the defendant might be willing to pay for it, because they might not be willing to pay for it what it was worth, but what, under all the circumstances of the case, situated as the parties were in relation to each other, was the water which the defendant company took without any right, if it took any, fairly worth?] [1]  I do not intend to dwell at length upon the testimony of the witnesses, nor shall I attempt to quote it at length; I shall merely refer to it in passing as bearing upon the different points of the case.

" It is alleged upon the part of the plaintiff, and the allegation is sustained by the evidence of several of the witnesses, that this state of affairs existed at the general works of the

company, and that the water apparatus of the coal company was connected, by means of a four inch pipe, with the water apparatus of the Scranton Gas and Water Company ; that there were three valves in that, by means of which the water could be used, and it is alleged that the defendant company did repeatedly use that four inch pipe for the purpose of drawing water from the pipe of the water company, and using that water for other purposes than that mentioned in the first section of the agreement of 1881. You will remember the testimony of Mr. Neibell, Mr. McDermott and Mr. Baggett as to that fact; all three testified positively that at some time or other from 1881 to 1891 they did open these valves; that they opened them whenever it was necessary to do so by reason of any mishaps to the apparatus of the defendant company. None of them testified how often they did open them, nor how much water they drew from them. Mr. Neibell testifies that in his judgment, taking all the time altogether, that it would amount to about a month. Now, then, gentlemen of the jury, is that true ? [Were these valves opened, and the water belonging to the water company turned into the pipes of the defendant company and used for other purposes than for steam, hydraulics, fire hydrants and for the stores and dwelling houses ? If they were, then the coal company ought to pay for the water, and it ought to pay a reasonable price.] [2] You have also the testimony of Mr. Reeves and Mr. Phillips as to the condition of the hydrant, which has been called by some of the witnesses Wolf's hydrant, the hydrant situated near Mr. Wolf's office. Mr. Phillips testifies to the distance which the hose attached to that hydrant squirted. There is evidence in the case that that hydrant would not have sufficient pressure from the waterworks of the company, that is from the water apparatus of the coal company, to throw water that distance. You will remember there is evidence in the case that the pressure on the pipes of the coal company was only fifteen, while the pressure on the pipes of the water company was somewhere from twenty-four to forty ; that there was a difference in the pressure, and the allegation upon the part of the plaintiff, is that the pressure upon the hydrant at Wolf's office was evidence that that water came, not from the pipes of the coal company, but from the pipes of the water company. You have also the testimony

of Mr. Reeves as to the amount of pressure that was on that hydrant. . . .

" It is claimed upon the part of the defense, that all this water is provided for by the contracts of 1874 and 1881, and that they are, therefore, not liable for any of this water with which they are charged with having taken. . . . The construction that is to be placed upon these two contracts of 1874 and 1881 is a question of law, and the responsibility for declaring what the law with regard to those contracts is, is upon me, upon the court trying the case, and you have nothing to do with that; you must accept my statement of the law as to what the obligation imposed by the contract is, and what it means. . . .

" Now, I say to you, therefore, as a matter of law, gentlemen of the jury, that the only water, if you believe that this was pure water in the pipes of the Scranton Gas & Water Company, that the only purposes for which the defendant company had a right to use that water, would be the four purposes which I have mentioned, that is for the generation of steam, for fire hydrants, hydraulics, for the stores and dwelling houses specified in the contract of 1874. Of course the stores and dwelling houses are entirely out of this case; there is no claim made for any extra water used there. If the defendant company used any of this pure water, as I said before, they are liable to the plaintiff for it, and they should pay the fair value of it. [3] Undoubtedly under the second clause of the contract of 1881 the gas and water company is liable to furnish the defendant company additional and other water, but the source of that water is itself pointed out in the contract, that is from Roaring brook or the Lackawanna river, and the company itself was to keep its own apparatus there in good repair. It is not necessary for me to refer at length to that agreement, because it points out what should be done, and if the defendant company desired any water for additional purposes, it was their duty to request the gas and water company to furnish it to them. They had no right whatever to go and tap the water pipe of the gas and water company and use the water for any other purposes than the purposes pointed out in the contract, that is, the four purposes that I have mentioned.

" But, while that contention upon the part of the defendant cannot be sustained, they allege further that even if water was

used it was not so large an amount used as is claimed by the plaintiff, and that it was not of so great a value, and they allege further, that the plaintiff's claim being for more than six years they cannot recover, because what is older than six years prior to the bringing of this suit is barred by the statute of limitations. I should say that this question of the statute of limitations raises a very important question in the case. [Ordinarily actions of this kind must be brought within six years from the time the right of action accrued, from the time the right to begin suit commenced; it must be brought within the six years. But you will observe, gentlemen of the jury, that in this case it is alleged, and there is evidence to prove it, that the defendant company took this water from the pipe of the gas and water company without their knowledge and consent, and that they did not know it until 1891. If they took the water from the pipes of the water company without having any right to do so and without the knowledge and consent of the water company, then such abstraction of the water was a fraudulent use of the water, and until the plaintiff discovered it they could not bring suit, of course they could not, and therefore that would be an exception to the general rule that the action must be brought within the six years. But if the plaintiff company knew it, or had reasonable ground to know it, if they knew it, of course they had to bring their action within the six years, if they had reasonable ground to know it, it was their duty to inquire, but it was not their duty to inquire unless they knew or had reasonable ground to know; it was not their duty to inquire whether the defendant company was abstracting the water from their pipe; it was the duty of the defendant company if they took the water from the pipe of the gas and water company without any right to do so; it was the duty of the defendant company to notify the gas and water company of what they had done, then the gas and water company would have known at once what was being done, and they would have acted, that is, it would have been their duty to act within the six years. Now, that is the allegation upon the part of the plaintiff, that they did not know; they allege that this water was withdrawn from their pipes without any right upon the part of the defendant and without any knowledge or consent on the part of the plaintiff. If that was so, then to that extent the statute of

limitations would not apply.] [4]   But if they knew it, or had
reasonable ground to know it, then the statute would apply to
such rights as had accrued prior to six years of the bringing of
the action.

"It is further contended upon the part.of the defense that
no such quantity of water was taken, or could have been taken
and used by them, from the pipe, even though they had no
right to use it, as is claimed by the plaintiff; . . . and that it
was worth no such price as is claimed by Mr. Scranton, the
president of the water company.  They claim that the most
the plaintiff can recover for that place, is for the month which
Mr. Neibell says it was opened altogether, that is taking all the
time it was opened put together.

". . . It is contended upon the part of the defendant, that
inasmuch as that pipe supplies all the water used for other pur-
poses, that they did not use any more than that pump supplied
before, when they drew water from the white pipe, or from the
pure water pipe of the gas and water company.  Mr. Wehrum
was called and testifies to having made an actual measurement
of the pump, and measuring its capacity he gives you the size
of the pump. . . .

"There is some comparison made as to the value for the
water that is supplied to the Scranton Steel Company, another
steel company further down the river.  It is alleged upon the
one side and the other, that there is some difference, and in
other respects that there is great similarity.  Upon the part of
the plaintiff it is claimed that substantially the same work is
done by these two mills, and that the price paid for the water
at the Scranton steel mill was about the price which is now
claimed by the plaintiff for this present supply at the convert-
ing works.  You have also the testimony of Mr. Williams who
was called to some extent to contradict the testimony of Mr.
Scranton.  You will remember that Mr. Scranton said the Scran-
ton Steel Works paid $8,000 a year for their water supply
down on the flats.  Well, Mr. Williams produced the figures
and the bills, what the consolidated company had actually paid
for 1891, '92, '93 and '94; he gives it at an average of $5,886.
He testifies also that in these bills for the Scranton mill they
pay not so much a year but they pay on tonnage, I think, five
cents a ton; that is my recollection now of his testimony about
that. [5] . . .

"If you should find in favor of the plaintiff, gentlemen of the jury, then it will be necessary for you to ascertain how much in dollars and cents. Take up·these different items for which the plaintiff claims, and ascertain whether he is entitled to anything for them, and if so, how much. If the plaintiffs are entitled to recover, then the defendant ought to pay. If they are not entitled to recover the defendant ought not to pay. If the plaintiff is entitled to recover, as I said before, they ought to be able to recover, and the jury should allow them, what the matter was fairly worth, and when you have ascertained that, find out what it all amounts to, add it all together and add interest to it down to the present time, and render a verdict for that amount. [6] If you should find a verdict in favor of the defendant, then you simply say you find in favor of the defendant.

"I have been requested by both parties to charge you upon certain points. Upon the part of the plaintiff I have been requested to charge you:

"1. If the defendant committed constructive fraud in taking water from plaintiff's pipes as shown by the evidence, if believed by the jury, and said fraud was not discovered by the plaintiff until within six years before this suit was brought, the statute of limitations is no bar to this action and the verdict may be for the plaintiff. The tort having been waived in this case does not change this rule. *Answer:* I affirm that proposition, gentlemen of the jury." [7]

"2. The plaintiff may recover in this case, if under the law and the evidence you find for the plaintiff, such an amount as would be a reasonable price, had a contract been made between the parties for the water taken under the conditions as shown by the evidence if you believe the same. *Answer:* I affirm that proposition ; that is, if you find the plaintiff is entitled to recover, then they are entitled to recover such a price for the water as would have been a reasonable price if the parties had made a contract for it." [8]

"On the part of the defendant I am requested to charge you:

"1. The plaintiff is not entitled to recover in this action, and the verdict of the jury must be for the defendant. *Answer:* I decline to affirm that proposition. It asks me to take the case away from your consideration, and to render a verdict in

favor of the defendant. I think under the evidence the case is properly one for you." [9]

"2. Under the contract of 1874, as modified by the contract of 1881, the plaintiff, the Scranton Gas & Water Company, was obliged to furnish to defendant, the Lackawanna Iron & Coal Company, upon demand, all water for all purposes, except for water wheels, required by its works, in excess of the water obtained by its own appliances, and plaintiff was not entitled to any compensation in excess of the $10,000 per annum, which has been paid for the value of use of said water, nor for the value or use of plaintiff's pipes, reservoirs or other appliances in supplying the same, but in the event of a supply of water for purposes other than generation of steam, fire hydrants or hydraulics, was entitled to receive only the interest upon the cost of any works required to be erected for the purpose of supplying such water, and the actual cost of operating and keeping the same in repair, and the burden of proof is upon the plaintiff to show the erection of any works necessary for such purpose, the cost thereof and the cost of operating and keeping the same in repair. *Answer:* I affirm this proposition, with the qualification as to the kind of water that was to be used. There is no doubt at all that under this supplement of 1881 the plaintiff company was bound to furnish the defendant company with the water they needed, upon request, whenever required to do so, only they were not obliged to furnish them all pure water from their pure water pipe. The gas and water company had the right to resort to the Roaring brook and Lackawanna river water if they desired to do so. If it were not I would affirm the proposition absolutely." [10]

"3. The plaintiff is not entitled to recover for any water used at defendant's converting works prior to May 19, 1888, this suit having been commenced upon the 19th day of May, 1894. *Answer:* I decline to affirm that proposition, gentlemen of the jury, but desire to say to you that if the plaintiff knew that the water was being abstracted from their pipe, and used at the converting works for other purposes than the four purposes which are mentioned in the first section of the contract of 1881, then it was their duty to bring their action to recover for that water within six years, and if they did not bring their suit within the six years, after that they could not

recover for the water that had been used prior to the six years. Now, if they knew, or had reasonable ground for knowing, that water was used at the converting works six years prior to the bringing of this suit they cannot recover for that, but they can recover, if the water was used, for that which was used within six years prior to the bringing of the suit, and the suit was brought on the 19th of May, 1894." [11]

" 4. Plaintiff is not entitled to recover for any water used at defendant's foundry, boiler, machine, carpenter and smith shops prior to May 19, 1888, this suit having been commenced May 19, 1894. *Answer:* I decline to affirm that point for the same reason that I have given to you in declining to affirm the third point. They say the same rule applies to the foundry, blacksmith shop, and those places, that they ask to have applied to the converting works. Now, if the plaintiff knew that the water was being used there at the foundry, or at the blacksmith shop, then they were bound to bring the suit for the water that was used there within six years, and if they did not it is barred by the statute of limitations, the right to recover for it is gone, but they may recover for what was used within the six years. If they did not know that it was used there, then they may recover for it all." [12]

" 5. The plaintiff is not entitled to recover for any water used at defendant's mule barns prior to May 19, 1888, this suit having been commenced May 19, 1894. *Answer:* I decline to affirm that proposition for the reasons that I have given in my answers to the third and fourth points." [13]

" 6. Plaintiff is not entitled to recover for any water used through four-inch connection prior to May 19, 1888, this suit having been commenced May 19, 1894. *Answer:* I decline to affirm that proposition for the reasons that I have given in my answers to the third and fourth points." [14]

" 7. Plaintiff is not entitled to recover for any water furnished for any purpose, nor for the use of any water, nor for the use of pipes, reservoirs and other appliances, nor for any other matter or thing prior to May 19, 1888, this suit having been commenced May 19, 1894. *Answer:* I decline to affirm that proposition for the reasons that I have given in my answers to the third and fourth points. It depends upon the knowledge of the plaintiff. If the plaintiff knew of the use of

the water being made by the defendant, then they were bound to bring their suit within six years. If they did not know, then it was the duty of the defendant to have made it known; and if they did not, but took it secretly, without having the right to do so, then it was a constructive fraud upon the plaintiff. No fraud may have been intended, but it would be a constructive fraud upon the plaintiff. A use of their property without their consent and without any right, would be such a fact as would prevent the right of action being barred by the statute." [15]

Verdict and judgment for plaintiff for $27,500. Defendant appealed.

*Errors assigned* among others were (1–15) above instructions, quoting them.

*M. E. Olmsted* and *John G. Johnson, Joseph O'Brien* and *Hamilton Wallis* with them, for appellant.—Under the agreements of 1874 and 1881, defendant having paid $10,000 per annum for water for generation of steam, for fire hydrants and hydraulics and for stores and dwellings, was entitled to water for all other purposes upon payment of the additional cost, if any, to plaintiff. No such cost having been shown, the jury should have been instructed to find for defendant: White v. Smith, 33 Pa. 186; Phila. Tool Co. v. Brit. Am. Assurance Co., 132 Pa. 236.

It was error to exclude correspondence showing the construction of the parties: Bishop on Contracts, ed. of 1887, sec. 412; Lehigh Coal & Nav. Co. v. Harlan & Henderson, 27 Pa. 429; Coleman v. Grubb, 23 Pa. 393; Topliff v. Topliff, 122 U. S. 121.

The statute of limitations is not barred, even by actual fraud, if by reasonable diligence it might have been discovered: Act of April 22, 1856, P. L. 532; act of March 27, 1713, 1 Sm. L. 76; 13 Am. & Eng. Ency. of Law, 692; Spring v. Gray, 5 Mason, 505; Sankey v. McEleve, 104 Pa. 265; Troup v. Smith, 20 Johnson, 44; Leonard v. Pitney, 5 Wend. 30; Allen v. Miller, 17 Wend. 202; Kirby v. Lake Shore etc. R. R., 120 U. S. 130; Foster v. Mansfield, etc. R. R., 146 U. S. 88; Bates v. Preble, 151 U. S. 149; Pearsall v. Smith, 149 U. S. 231.

Where the fraud is constructive only, and not actual, the statute of limitations runs from the time of the transaction, without reference to the time of the discovery: 13 Am. & Eng. Ency. of Law, 728; Wilmerding v. Russ, 33 Conn. 67; Downs v. Harris, 75 Ga. 834; Printup v. Alexander, 69 Ga. 553; Austin v. Raiford, 68 Ga. 201; Ryal v. Morris, 68 Ga. 834; Rouse v. Southard, 39 Me. 404; Walker v. Soule, 138 Mass. 570; Nudd v. Hamlin, 8 Allen (Mass.), 130; Rice v. Burt, 4 Cush. (Mass.) 208; Fleming v. Culbert, 46 Pa. 498; Glenn v. Cuttle, 2 Grant's Cases, 273; Downey v. Garard, 24 Pa. 52; Campbell v. Boggs, 48 Pa. 524; Morrell v. Trotter, 39 Leg. Int. 256; Hollingshead v. Whitaker, 40 Leg. Int. 36; Farnham v. Brooks, 9 Pickering, 212.

The plaintiff did not know, nor had it such notice that by reasonable diligence it might have discovered the use of the water.

*I. H. Burns* and *H. W. Palmer, L. Amerman* with them for appellee.—There is no need for construction or interpretation of this contract: Phillips v. Meily, 106 Pa. 543; Hoffman v. Bloomsburg & Sullivan R. R., 157 Pa. 174; Fisher v. Moyer, 17 W. N. C. 500; Harvey v. Vandegrift, 89 Pa. 346; Shafer v. Senseman, 125 Pa. 310; Palmer v. Farrell, 129 Pa. 162; Allegheny City v. Ry., 159 Pa. 411; Coke on Littleton, 206; 2 Blackstone, 157.

The statute of limitations was made to apply to the negligent creditor who sleeps upon his rights. It was not made to encourage fraud, nor to assist and encourage a trespasser who surreptitiously and by stealth takes what does not belong to him, or fraudulently conceals from the party wronged the facts that give him a right of action: Mitchell v. Buffington, 10 W. N. C. 361; Avery v. Cleary, 132 U. S. 604; Bailey v. Elmer, 21 Wall. 342; Delram v. Brown, 19 Conn. 421; Relf v. Eberly, 23 Iowa, 467; Meader v. Norton, 11 Wall. 442; Rolfe v. Gregory, 4 De Gex & J. 349; Jones v. Smith, 576; Michoud v. Snod, 4 How. (U. S.) 503.

The cases cited by appellant fail to mark the distinction drawn by this court in Mitchell v. Buffington. In all there is the existence of some contract or fiduciary relation existing between the parties. The following are the cases cited and

the relations existing between the parties: Sankey v. McElevey, 104 Pa. 265—Debtor and creditor; Wickersham v. Lee, 2 Norris, 416—Attorney and client; Ferris v. Henderson, 2 Jones, 49—Master and slave; Troup v. Smith, 20 Johns, 33—Surveyor and employer; Leonard v. Pitney, 5 Wend. 30—Vendor and vendee of land; Allen v. Muller, 17 Wend. 202—Held that a court of law could not notice the fraud; Foster v. Mansfield R. R., 146 U. S. 88—Company and stockholder; Pearsoll v. Smith, 149 U. S. 231—Bankrupt and assignee; Gibbs v. Guild, 92 B. D. 59—Promoter and Purchaser of stock; Fleming v. Culbert, 46 Pa. 498—Attorney in fact and client; Glenn v. Cuttle, 2 Grant's Cases, 273—Attorney in fact and principal; Downey v. Garard, 24 Pa. 52—Attorney and client; Campbell v. Boggs, 48 Pa. 524—Attorney in fact and client; Morrell v. Trotter, 39 Leg. Int. 256—Trustee and cestui que trust; Musselman v. Eshleman, 10 Pa. 394—Administrator and heirs; Waterman v. Brown, 31 Pa. 161—Assignor and assignee; Diller v. Brubaker, 52 Pa. 498—Trustee and cestui que trust; Hollingshead v. Whittaker, 40 Leg. Int. 36—Trustee and cestui que trust; Farnham v. Brooks, 9 Pick. 212—Principal and agent; also copartner.

OPINION BY MR. JUSTICE WILLIAMS, March 25, 1895:

Two important questions are presented on this record. The first of these relates to the construction of the contracts between the parties for the supply of water to the defendants. A contract was made in 1874 and largely modified by a supplemental agreement made in 1881, which provided that the gas and water company should furnish the defendants with pure water for the " generation of steam, for fire hydrants and hydraulics, and for stores and dwellings " belonging to the Iron and Coal Company, for the price of ten thousand dollars per annum payable in monthly installments. It stipulated that the undertaking should not include the furnishing of water for tuyeres, boshes or condensers or for any other purpose than those named in the agreement. It also stipulated for free access by the officials of the water company, to the works of the iron and coal company, to enable them to see if the arrangements for saving water were working satisfactorily, and reserved the right to put meters upon the waste pipes at the pleasure of the water company, in

order to determine with certainty the amount of water used under the contracts. Having disposed of this subject the contract proceeded to consider another, viz : a supply of water for the purposes previously excluded. The water company undertook in this part of the agreement to furnish the defendant, upon reasonable notice, " Such other water as may be required by said Iron and Coal Co.," for tuyeres, boshes and condensers, and for all other purposes required by the works except for water wheels, from the Lackawanna river or Roaring brook, for which it was to receive interest on the cost of constructing the necessary works to bring the water to the defendant's mills, and the actual cost of operating them and keeping them in repair. The water of the Lackawanna river and that of Roaring brook at or near the defendant's works, was not pure water but was charged with acids and other impurities from the drainage of the coal mines near which both streams passed, which rendered the water unfit for domestic purposes and for generating steam. The learned judge of the court below held that the contract provided for a supply of pure water for the four enumerated purposes, and for a supply of " other water," or water not pure, to be taken from the river or the brook at any convenient point, for all other purposes except water wheels that the business of the defendants might require. This was a correct construction of the contract. The undertaking of the water company, was to supply pure water for certain specified purposes, and to supply for other purposes " such other water " as might be needed. The words " such other water " are not equivalent to such additional water, but are put in contrast with " pure water " which the water company, was to supply for purposes that required pure water. The right of the defendant to pure water, under the terms of the contract, was confined therefore to such a supply as was necessary for the " generation of steam, for fire hydrants and hydraulics, and for stores and dwellings." It had the right to call upon the water company, on reasonable notice, for a supply of river water for all other purposes, but it had no right to demand pure water for such other purposes, or to take it without demand from any connection under its control, without being liable to pay for it in addition to the sum of ten thousand dollars, the price of the water to which it was entitled under the contract.

The plaintiff alleges that the defendant did use pure water

for purposes for which it had no right to use it, and without the knowledge of the plaintiff. The defendant denies this or alleges that only a small quantity was used. The facts were for the jury, but the learned judge was right in holding that the defendant was liable in this action for such quantity of water as was improperly taken from the pure water supply. But the plaintiff's claim extended over a period of ten years, from 1881 to 1891; and this brings us to the second question, which relates to the statute of limitations. The learned judge held and so instructed the jury that if the defendant " took the water from the pipes of the water company, without having any right to do so, and without the knowledge and consent of the water company, then such abstraction of the water was a fraudulent use of the water, and until the plaintiff discovered it they could not bring suit . . . . and therefore that would be an exception to the general rule that the action must be brought within six years." Now it must be borne in mind that no deception or fraudulent practice was made use of to divert the attention of the water company, or to relax its vigilance. It must also be remembered that the connection by means of which the pure water was used for unauthorized purposes was put in by the water company, and that its officers and employees had access to it at any and all times when they might choose to examine it. All that the evidence shows, or that the instruction of the learned judge assumes, is that the pure water was taken at times, without any legal right to take it, and without the knowledge and consent of its owners. Reduced to its true proportions the question is thus seen to be whether ignorance of the commission of a trespass will prevent the running of the statute against the owner of the property injured. The trespasser who enters my fields or my uncultivated lands and takes possession and holds them for the statutory period, acquires title to that which he has taken. He is not required to tell me of his entry, or render an account for the timber he has taken or the profits he has made. He comes upon my land, in the language of the learned judge of the court below, " without having any right to do so, and without the knowledge and consent " of the owner; but at the end of the statutory period he ceases to be a trespasser. My remedy is gone, and my land has gone with it. While I was wholly ignorant of his entry upon my

land the statute has given it to him. The fee simple passes out of me and vests in him without any act of mine and without my knowledge. The cases that so hold are too numerous to justify an attempt at citation. The true reason for this rule was stated in the recent case of Lewey v. The Coke Company, 166 Pa. 536. What an owner might know if he was personally present by himself or his employees on the surface of his possessions, he is bound to know, unless his attention is diverted by the fraudulent artifices of the wrong-doer. Silence or concealment will not prevent the running of the statute : Sankey v. McElevey, 104 Pa. 265. The question in any given case is not what did the plaintiff know of the injury done him, but what might he have known by the use of the means of information within his reach with the vigilance the law requires of him? In Lewey v. The Coke Company, supra, we held that the owner was not bound to take notice of a trespass committed upon the coal underlying his land, to which he had no access and at which his presence, by reason of the position of the coal stratum, was impossible. When knowledge is impossible because of the laws of nature, or because of the actual fraud of the wrongdoer, the statute runs from the time of discovery. But a constructive fraud is not enough: Downey v. Garard, 24 Pa. 52 ; Campbell's Administrator v. Boggs, 48 Pa. 524; Hollinshead's Appeal, 103 Pa. 158. But in the case now under consideration the pipes and the connection through which it is alleged water was used in excess of the defendant's contract rights, were put in by the water company, were its property, and were as matter of law under its control. There was no difficulty in the way of fullest knowledge. The defendant used more water than was paid for and was silent in regard to it. The plaintiff took no pains to know whether the contract was being observed by its customer, and was therefore in ignorance of the fact that too much water was used. This state of facts is the common one on which the statute is held to run in favor of a trespasser from the date of trespass, and it should have been so held in this case. The 4th, 7th, 11th, 12th, 13th, 14th and 15th assignments of error are sustained.

The judgment is reversed and a venire facias de novo awarded