518

## Schuler v. King

*Ambrose Campana*, for plaintiff.

*Don L. Larrabee*, for defendants.

WILLIAMS, P. J., February 5, 1955.—Plaintiff filed a complaint in ejectment to secure possession of a farm property in Cascade Township.

The parties agreed that the court should hear the case without a jury and that the court's findings would be considered to have the same effect as a jury verdict.

Under date of July 13, 1954, Judge Charles S. Williams found in favor of defendants. In so finding he made various findings of fact and one conclusion of law.

He found that the property in question was deeded to Matt McDonald in 1883 and that Matt McDonald died January 14, 1905, devising the property in question to his wife for life, with remainder to his son, James E. McDonald. The wife of Matt McDonald died in 1907, and James E. McDonald died May 30, 1946, leaving a will in which he gave his sister, Nellie McDonald Schuler, all of his property. The court further found that both Nellie McDonald Schuler and James McDonald had lived in Cascade Township but with-

drew their residences in 1902, James McDonald residing in Tennessee.

The court found that Fred A. King resided on the farm openly, adversely, actually, continually and hostilely from 1908 until 1940; that on October 15, 1949, he deeded this property to his son, Francis S. King; that in 1940 Fred A. King left the farm but left possession in his son Donald until 1942, that he allowed it to be vacant from 1942 until 1944, that his son Donald lived on the farm again from 1944 to 1946 when his son Francis took possession. The court found that during this entire period of adverse occupancy, Fred A. King built a garage on the property, put a roof on the farmhouse, carried insurance on the property in his own name, received money for losses, was assessed as owner of the property and paid all taxes during occupancy. The court also found that all of the neighbors considered the property as the King property.

Exceptions were taken to the opinion and findings of Judge Williams. Plaintiff abandoned all of her exceptions except that which promoted the question as to whether or not the original possession of Fred A. King was in subordination to the title of Matthias McDonald, and if it was in subordination to the title of Matthias McDonald, was actual notice of Fred A. King's adverse holding ever brought to the knowledge of the title holder Matthias McDonald or James F. McDonald?

Plaintiff argues that Fred A. King originally lived on the property during the occupancy of life tenant, and that therefore his possession was subordinate to that of life tenant, thereby making it necessary for James McDonald, the residuary devisee, to have actual notice of the adverse holding. The argument is that Fred A. King's original possession being at sufferance of the life tenant, and not having started adversely,

it is presumed to have continued as it commenced: Bannon et al. v. Brandon, 34 Pa. 263.

We cannot agree with this argument and were we to so hold, it is our opinion that the adverse and hostile actions of King over such a long period of time, coupled with the fact that James McDonald did nothing to assert authority over the farm, even though he on one occasion visited at the Cascade picnic, compel a dismissal of the exceptions.

King continuously lived on the farm, paid the taxes, collected insurance, was assessed as owning it, fixed the buildings, put on roofs, built other buildings and held himself out as the owner to such an extent that it was known by all of the people of the area as his farm. Surely James E. McDonald had notice that King was hostilely living on the farm.

Possession is "hostile" where one enters and exercises acts of dominion thereunder: Griffin et al v. Mulley et al., 167 Pa. 339. Fred King did just this.

Did James McDonald have notice of this adverse possession? We believe he did. Where one enters and holds adversely for 21 years he is not required to tell the owners of the entry. The question is not what did plaintiff know of the adverse entry, but what he might have known by the use of means of information within his reach with the vigilance the law requires: Scranton Gas and Water Co. v. Lackawanna Iron and Coal Co., 167 Pa. 136. James McDonald used no vigilance whatsoever. There was no testimony that King was living on the farm at the sufferance of James McDonald. There was testimony that on at least one occasion McDonald was in the neighborhood. There was no testimony which would indicate that through McDonald's allowance King continued to live on the farm.

The exceptions are dismissed, and the verdict in favor of defendants is sustained.

Greevey, J., concurs.