J-A16023-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| GEORGE AUBREY | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DONALD C. SANTORA | |
| Appellant | No. 1476 WDA 2013 |

Appeal from the Judgment Entered August 12, 2013
In the Court of Common Pleas of Butler County
Civil Division at No(s): A.D. Nos. 2009-20164
A.D. Nos. 2010-10640

BEFORE:  DONOHUE, J., OTT, J., and MUSMANNO, J.

MEMORANDUM BY OTT, J.:                    **FILED SEPTEMBER 17, 2014**

George Aubrey appeals from the Order entered August 12, 2013, in the Court of Common pleas of Butler Country, granting summary judgment in favor of Defendant/Appellee, Donald C. Santora.  The underlying action[1] involves a business dispute between partners in a business venture regarding the purchase of ophthalmic laser equipment.  Although Santora had been released from all responsibility regarding payment of the loan taken to purchase the equipment, Aubrey claimed the existence of an oral contract the terms of which obliged Santora to make payments on the loan.  After years of receiving no payments, Aubrey filed suit seeking declaratory

_____

[1] The complaint is a hybrid action seeking declaratory judgment and tort.

judgment on claims of fraudulent inducement, breach of duty of good faith and fair dealing and failure of consideration. Additionally, he claimed fraud and breach of contract. After pleadings were closed and relevant discovery conducted, the trial court granted Santora's motion for summary judgment. Following a thorough review of the submissions by the parties, relevant law, and the certified record, we affirm.

The factual and procedural history of this matter is complex, and we rely upon the recitation of the trial court in its Pa.R.A.P. 1925(a) opinion.[2]

> The matter before this Court arises from a business venture entered into by [Aubrey], [Santora], and two persons not parties to this litigation, Shawn Thomas and James Thomas. The four parties formed the enterprise LTK Northeast, LLC ("LTK") to purchase ophthalmic laser equipment to treat farsightedness. To purchase this equipment, the parties entered into a business loan agreement with Farmers National Bank of Emlenton ("Farmers"). Each partner, with the exception of James Thomas, signed a Promissory Note, a Commercial Security Agreement, and a Commercial Guaranty in conjunction with the loan. The Commercial Guaranty contained a Confession of Judgment clause. In the meantime, a dispute arose between [Santora] and Shawn Thomas regarding a different business venture in which they were partners. To resolve said dispute, on December 30, 2002, [Santora] and Shawn Thomas entered into an agreement (the "Thomas-Santora agreement"), whereby [Santora] agreed to transfer all of his ownership interest in LTK to Shawn Thomas. In return, Shawn Thomas agreed to replace [Santora] as guarantor on the LTK loan, and to release and indemnify [Santora] from his obligations under the LTK loan, and

_____

[2] The trial court issued a memorandum opinion, August 12, 2013, accompanying the order granting summary judgment. The trial court incorporated this memorandum into its October 3, 2013, Rule 1925(a) memorandum.

to cooperate in removing [Santora] as a guarantor of said loan. LTK subsequently defaulted on the loan. On July 29, 2003, [Aubrey] satisfied the loan, and Farmers assigned all of its right, title and interest under the loan documents, including the Commercial Guaranties, to [Aubrey]. On August 26, 2004, [Aubrey] and Shawn Thomas entered an agreement (the "Aubrey-Thomas agreement"), whereby, in return for [Aubrey's] release of [Santora] from his personal guaranty and any and all liability under the LTK loan, Shawn Thomas agreed to make a lump sum payment, pay 37 regular monthly payments towards the loan balance, and to transfer to [Aubrey] additional security in the nature of an automatic default note in favor of [Aubrey], with Shawn Thomas as obligor, and convey to [Aubrey] a second mortgage against Shawn Thomas's residence. On August 27, 2004, Shawn Thomas delivered the executed note and mortgage, and [Aubrey] signed and delivered the Release of Personal Guarantor document ("Release"). Said Release extinguished [Santora's] guaranty and discharged him from any further obligations under the LTK loan agreement.

In his Third Amended Complaint, [Aubrey] alleges that, prior to the Aubrey-Thomas agreement, [Aubrey] and [Santora] entered into an oral contract, whereby, in consideration for [Aubrey's] release of [Santora's] obligations under the LTK loan, [Santora] promised to promote the use of the LTK laser and to use it to treat his patients and any patients [Aubrey] referred to him. [Aubrey] alleges that he and [Santora] also agreed that said treatments would be performed for a patient charge of $1,500 per eye, and that [Santora] was to remit to [Aubrey] all fees received, except for $100 per eye. Said remittance was to be applied towards repayment of the LTK loan. [Aubrey] alleges [Santora] knew the laser had failed to perform as expected, yet [Santora] induced [Aubrey] to release him from the LTK loan, based upon [Santora's] oral agreement to use the laser and to remit payments to [Aubrey].

On December 17, 2008, [Aubrey] sued [Santora] in the Court of Common Pleas of Allegheny County, Pennsylvania. On January 29, 2009, while the Allegheny County case was pending, [Aubrey] filed a Complaint in Confession of Judgment against [Santora] in Butler County, at Case No. CP 09-20164. On September 21, 2009, in Allegheny County, [Santora] filed Preliminary Objections to [Aubrey's] Complaint. [Aubrey] filed an amended complaint, and [Santora] filed further Preliminary

Objections. [3]  On September 22, 2009, the Allegheny [County] Court of Common Pleas granted [Santora's] Preliminary Objection regarding improper venue, and transferred the above captioned case to the Butler County Court of Common Pleas, docketed at the Case No. AD 10-10640.  On March 30, 2010, [Santora] filed his Petition to Strike or Open Confessed Judgment and Stay Proceedings at Case No. CP 09-20164.  On April 28, 2010, this Court granted [Santora's] Petition to Open the Confessed Judgment and imposed a stay on the confessed judgment until resolution of Case No. AD 10-10640.  On December 15, 2011, Case Nos. CP 09-20164 and AD 10-10640 were consolidated.  At the time for oral argument on [Santora's] remaining Preliminary Objections, [Aubrey] requested leave of court to file a Second Amended Complaint.  On February 10, 2012, [Aubrey] filed his Second Amended Complaint, to which [Santora] filed Preliminary Objections.  Following disposition of [Santora's] Preliminary Objections to [Aubrey's] Second Amended Complaint, [Aubrey] filed his Third Amended Complaint on July 26, 2012, asserting claims of Declaratory Judgment - Fraudulent Inducement; Declaratory Judgment – Breach of Duty of Good Faith and Fair Dealing; Declaratory Judgment – Failure of Consideration; Fraud; and Breach of Contract.  On September 13, 2012, [Santora] filed his Answer, New Matter and Counterclaim.  On April 23, 2013, [Santora] filed his Motion for Summary Judgment and Brief in Support.  On May 10, 2013, [Aubrey] filed his Reply to New Matter, Answer to Counterclaim and New Matter.  On May 16, 2013, [Aubrey] filed his Response to [Santora's] Motion for Summary Judgment.  On May 23, 2013, [Santora] filed his Response to New Matter.  On June 6, 2013, [Aubrey] filed his Memorandum of Law in Opposition to [Santora's] Motion for Summary Judgment.  Oral argument on [Santora's] Motion for Summary Judgment was heard on June 11, 2013.

In his Motion for Summary Judgment, [Santora] argues that [Aubrey] has failed to produce evidence sufficient to raise any

---

[3] There appears to be scriveners' errors regarding some of the dates listed here.  The docket refers to first preliminary objections being filed on May 26, 2009; amended complaint filed on June 12, 2009; preliminary objections raising venue filed on July 2, 2009; and preliminary objections regarding venue granted on September 22, 2009.

question of material fact, and that [Aubrey] has failed to set forth any cause of action or claim that would entitle him to the relief he seeks. In response, [Aubrey] argues that he has presented sufficient evidence to satisfy the necessary elements for each count sufficient to raise a question for a jury to determine.

Trial Court Opinion, 10/3/2013, at 1-5.[4]

Initially, we note our relevant scope and standard of review:

> Our scope of review of a trial court's order disposing of a motion for summary judgment is plenary. Accordingly, we must consider the order in the context of the entire record. Our standard of review is the same as that of the trial court; thus, we determine whether the record documents a question of material fact concerning an element of the claim or defense at issue. If no such question appears, the court must then determine whether the moving party is entitled to judgment on the basis of substantive law. Conversely, if a question of material fact is apparent, the court must defer the question for consideration of a jury and deny the motion for summary judgment. We will reverse the resulting order only where it is established that the court committed an error of law or clearly abused its discretion.

> *Grimminger v. Maitra*, 887 A.2d 276, 279 (Pa. Super. 2005) (quotation omitted). "[Moreover,] we will view the record in the light most favorable to the non-moving party, and all doubts as

_____

[4] Aubrey is seeking to void the release he entered into with Santora. He claims although he signed two separate written documents, both acknowledging Santora was free of all liability regarding the LTK loan from Farmers Bank, a prior oral agreement with Santora rendered those written documents unenforceable as Santora agreed to perform laser eye surgery, using the equipment at issue, and that $1,400 of every $1,500 charged per procedure would be paid to Aubrey in order help satisfy the LTK loan the documents absolved him from paying. However, Aubrey alleges Santora knew he could not use the laser equipment because it was ineffective for its intended purpose.

to the existence of a genuine issue of material fact must be resolved against the moving party." **Evans v. Sodexho**, 946 A.2d 733, 739 (Pa. Super. 2008) (quotation omitted).

**American Nat. Property and Cas. Companies v. Hearn**, 93 A.3d 880, 883 (Pa. Super. 2014).

We also note, "an appellate court may affirm a valid judgment based on any reason appearing as of record, regardless of whether it is raised by the appellee." **Heim v. Medical Care Availability and Reduction of Error Fund**, 23 A.3d 506, 511 (Pa. 2011).

Aubrey's first three claims are related and we will address them together. Aubrey claims the trial court erred in determining the oral contract between him and Santora was unenforceable as being too vague. He also claims the trial court erred in rejecting his claim regarding the applicability of duty of good faith and fair dealing, and his claim that Santora failed to honor the consideration promised.[5] If the existence of an oral contract has not been established, then Aubrey's other claims must fail by necessity.

The trial court determined that the terms of the oral agreement, as claimed by Aubrey, were too vague to constitute a binding oral agreement. "An agreement is expressed with sufficient clarity if the parties intended to make a contract and there is a reasonably certain basis upon which a court

_____

[5] Specifically, Santora failed to pay Aubrey the $1,400 per patient agreed to pursuant to the oral contract.

can provide an appropriate remedy." **Helpin v. Trustees of Univ. of Pennsylvania**, 969 A.2d 601, 610-11 (Pa. Super. 2009) **aff'd**, 10 A.3d 267 (Pa. 2010). Specifically, the trial court determined there was no set term for the duration of the agreement – Aubrey variously claimed the agreement would continue until the "loan was retired, or perhaps five years." **See** Trial Court Opinion, **supra**, at 8. Further, there was no total sum of money to be paid, and no statement of the minimum or maximum number of patients to be treated.

Aubrey has argued that Santora agreed to treat a sufficient number of patients to provide revenue to Aubrey to help him retire the loan debt. Aubrey claims this, alone, provided a sufficient basis for the formation of the contract. Therefore, he asserts, at a minimum, he has provided sufficient evidence to require a jury to determine whether the contract existed and was enforceable.

After review of the certified record, we agree with the trial court that the terms of the agreement are too vague to fashion a remedy. Reviewing the allegations and evidence in the light most favorable to Aubrey, the evidence only shows that Santora agreed to treat some patients with the laser equipment and that he agreed to pay a portion of whatever fees were generated to Aubrey. There is no basis upon which a fact finder can

determine what Santora can be required to do to fulfill the terms of the agreement.[6]   The inability to fashion a remedy is compounded by the fact that Aubrey alleged that Santora knew he could not actually use the laser equipment.[7]   Because the oral agreement was specifically based upon payments generated from each use of the laser equipment, and the equipment cannot be used, the terms of the alleged agreement cannot be determined or enforced.

_____

[6] In this regard, the trial court aptly explained, "[W]here there is no evidence to a specific agreement as to the total amount that [Santora] was to remit to [Aubrey], neither the Court nor the jury is able to fashion an appropriate remedy for any breach of the alleged contract."  Trial Court Opinion, *supra*, at 9.

[7] Aubrey has alleged multiple times throughout his complaint that Santora knew that the laser equipment would not function satisfactorily for performing laser eye surgery.  *See* Third Amended Complaint at ¶¶ 19(a)-(e), 29.  Aubrey also testified in his deposition that he received a telephone call in 2007 from Robert Weera, the man who purchased the technology from the manufacturer in the manufacturer's bankruptcy.  Weera informed Aubrey of the technological problems with the laser equipment.  Aubrey has not alleged anywhere in the complaint that the equipment was, in fact, suitable for the surgical purposes proposed.  Pursuant to the evidence of record, in seeking to enforce this oral contract, Aubrey would require Santora to operate on patients using equipment that is admittedly unsatisfactory.  Therefore, the enforcement of the contract, would arguably be against public policy.  *See Ferguson v. McKiernan*, 940 A.2d 1236 (Pa. 2007) (contract is against public policy when it is contrary to long governmental practice, statutory enactments or violations of ethical or moral standards); 49 Pa.Code § 16.61(3),(6) (forbidding performing medical acts or treatment incompetently and the practice of healing arts fraudulently or with reckless indifference to the interest of a patient).

Aubrey's claims of lack of good faith and fair dealing and failure to pay consideration are both based upon the existence of an enforceable oral agreement.[8] Because the oral agreement is unenforceable, these additional claims must necessarily fail.

This leads to Aubrey's final claims regarding fraud and fraudulent inducement. Here, Aubrey argues the trial court erred in determining the statute of limitations barred both of these claims. We disagree.

The trial court correctly notes that the statute of limitations for claims based on fraud, including fraudulent inducement, is two years. **See** 42 Pa.C.S. § 5524(7).[9] Aubrey cannot recall when the fraudulent statements regarding the use of the laser equipment were made to him, but because those statements were necessarily made prior to the August 26, 2004 release, we know that August 26, 2004 is the latest date for calculating the statute of limitations. The complaint in this matter, alleging fraud, was not filed until December 17, 2008, more than four years after the statements were uttered and more than two years past the expiration of the statute of limitations.

_____

[8] Although these claims are labeled in terms of declaratory judgment, they read as straightforward breach of contract claims. This does not have any effect on the analysis or outcome of the issue.

[9] Additionally, Aubrey has not challenged the application of the two-year statute of limitations.

However, Aubrey also claims that he was unaware of the fraudulent nature of the statements until "mid-2007 when he conferred with Robert Werra who had purchased the Laser technology from Sunrise Technologies in its bankruptcy proceeding." *See* Appellant's Brief at 22. He asserts that because he did not discover the fraud until "mid-2007", the 2008 complaint was timely filed. This argument ignores Aubrey's requirement that he exercise reasonable diligence in the discovery of his injury. The discovery rule and application of reasonable diligence is described by our Supreme Court in *Fine v. Checcio*, 870 A.2d 850 (Pa. 2005).

> As the discovery rule has developed, the salient point giving rise to its application is the inability of the injured, despite the exercise of reasonable diligence, to know that he is injured and by what cause. *Pocono International* [*Raceway, Inc. v. Pocono Produce*], [503 Pa. 80,] 468 A.2d [468] at 471. We have clarified that in this context, reasonable diligence is not an absolute standard, but is what is expected from a party who has been given reason to inform himself of the facts upon which his right to recovery is premised. As we have stated: " '[T]here are [very] few facts which diligence cannot discover, but there must be some reason to awaken inquiry and direct diligence in the channel in which it would be successful. This is what is meant by reasonable diligence.' " *Crouse v. Cyclops Industries*, 560 Pa. 394, 745 A.2d 606, 611 (2000) (quoting *Deemer v. Weaver*, 324 Pa. 85, 187 A. 215, 217 (1936) (citation omitted)). Put another way, "[t]he question in any given case is not, what did the plaintiff know of the injury done him? [B]ut, what might he have known, by the use of the means of information within his reach, with the vigilance the law requires of him?" *Scranton Gas & Water Co. v. Lackawanna Iron & Coal Co.*, 167 Pa. 136, 31 A. 484, 485 (1895). While reasonable diligence is an objective test, "[i]t is sufficiently flexible...to take into account the difference[s] between persons and their capacity to meet certain situations and the circumstances confronting them at the time in question." *Crouse*, 745 A.2d at 611 (quotation omitted). Under this test, a party's actions are evaluated to determine

- 10 -

whether he exhibited "those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interest and the interest of others." *Id.*

Therefore, when a court is presented with the assertion of the discovery rules application, it must address the ability of the damaged party, exercising reasonable diligence, to ascertain that he has been injured and by what cause. *Id.* Since this question involves a factual determination as to whether a party was able, in the exercise of reasonable diligence, to know of his injury and its cause, ordinarily, a jury is to decide it. *Hayward* [*v. Medical Center of Beaver County*], [530 Pa. 320,] 608 A.2d [1040] at 1043. *See Smith v. Bell Telephone Co. of Pennsylvania*, 397 Pa. 134, 153 A.2d 477, 481 (1959). Where, however, reasonable minds would not differ in finding that a party knew or should have known on the exercise of reasonable diligence of his injury and its cause, the court determines that the discovery rule does not apply as a matter of law. *Pocono International*, 468 A.2d at 471.

*Fine v. Checcio*, 870 A.2d at 858-59.

It is undisputed that Santora never made any payment to Aubrey pursuant to the alleged oral agreement. Therefore, despite the fact that Aubrey claims to have been relying upon this stream of income from Santora to help him retire the loan, he never once inquired why no payments were forthcoming. Aubrey claims he was unaware of the fraudulent nature of Santora's statements until mid-2007 when he was informed of the problems with the technology by Robert Weera. Even this information was not discovered through any action taken by Aubrey. *See* Deposition of Aubrey, 11/14/2011, at 92. Aubrey did not need to suspect Santora had fraudulently misrepresented the quality of the laser equipment to know that

he had never been paid. The evidence demonstrates that Aubrey knew that he had not been paid and that he did nothing for a period of more than three years. We agree with the trial court that this lack of curiosity cannot, as a matter of law, represent the exercise of reasonable diligence.

Because Aubrey has not demonstrated he exercised the reasonable diligence required to protect his rights and toll the statute of limitations, he is not entitled to relief on his claims of fraud and fraudulent inducement.

Order granting summary judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/17/2014